UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 4:20CR00288-01-DPM |
| v. ) | |
| ) | |
| MUJERA BENJAMIN LUNG'AHO ) | |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS IN THE SUPERSEDING INDICTMENT**

The United States of America, through Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, and Stacy Williams, Assistant United States Attorney for said district, for its response states:

**BACKGROUND**

On February 3, 2021, a federal grand jury returned a thirteen-count Superseding Indictment against Mujera Benjamin Lung'aho charging him with (1) conspiracy to destroy by means of fire a Little Rock Police Department patrol car; (2) attempting to destroy by means of fire the same patrol car; (3) possession of an explosive device in furtherance of a crime of violence; (4) possession of an unregistered destructive device; (5) manufacture of a destructive device; (6) conspiracy to destroy by means of fire an Arkansas State Police patrol car; (7) destroying by means of fire the same patrol car; (8) possession of an explosive device in furtherance of a crime of violence; (9) possession of an unregistered destructive device; (10) conspiracy to destroy by means of fire a North Little Rock Police Department patrol car; (11) destroying by means of fire the same patrol car; (12) possession of an explosive device in furtherance of a crime of violence; and (13) possession of an unregistered destructive device. The charges stem from three separate incidents during which there was an attempt to burn a Little Rock Police Department patrol car and

successful burnings of an Arkansas State Police patrol car and a North Little Rock Police Department patrol car. During each incident, the perpetrators used, or attempted to use, an improvised explosive device commonly known as a Molotov cocktail, which consisted of a glass bottle filled with gasoline and stoppered with a cloth rag soaked in an accelerant. The perpetrators would light the rag, then throw the bottle at the vehicle, at which point the bottle would break, spreading flames across the vehicle.

On November 23, 2021, the defendant filed the instant motion, in which he seeks to have this Court dismiss Counts One, Two, Three, Four, Six, Seven, Eight, Ten, Eleven, and Twelve of the Superseding Indictment. For the following reasons, the United States respectfully requests that the defendant's motion be denied in its entirety.

## **COUNTS ONE, TWO, SIX, SEVEN, TEN, AND ELEVEN**

Counts One, Two, Six, Seven, Ten, and Eleven of the Superseding Indictment all involve violations, attempted violations, or conspiracies to violate 18 U.S.C. § 844(f)(1), which states that "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both." The three police organizations named in the Superseding Indictment all receive funds from the federal government to assist with their law-enforcement duties. The defendant contends that the statute does not apply to the patrol cars at issue in this case because those cars were not purchased using federal funds and that extending the statute to include the property involved in this case would exceed Congress's authority. The defendant is mistaken.

In support of his argument, the defendant cites *United States v. Hersom*, 588 F.3d 60 (1st Cir. 2009). In that case, Hersom pled guilty to one count of violating section 844(f)(1) after he and a codefendant set several fires that destroyed a block of buildings in Lewiston, Maine. *Id*. at 62. The City of Lewiston had provided financing to renovate at least one of the buildings, which was privately owned, using funds obtained from the United States Department of Housing and Urban Development. *Id.* Hersom appealed from his guilty plea, arguing that, in order for section 844(f)(1) to be constitutional, the property in question had to be owned, leased, or possessed by the United States or one of its instrumentalities. *Id*. at 63. The court rejected Hersom's interpretation of the statute and held that "in the case of organizations receiving federal financial assistance related to specific property, we construe section 844(f) as limited in general to arson of that particular property." *Id*. at 67.

Here, the defendant argues that, under *Hersom*, section 844(f) does not apply to the property at issue because it was not purchased using federal funds. However, even if this Court were persuaded by the rationale in *Hersom*, this case is readily distinguishable, as the federal financial assistance received by the police agencies is not always related to any specific property. Instead, assistance is given to fund a wide range of programs that assist the agencies in carrying out their core functions of law enforcement. The *Hersom* court itself recognized that it was possible that the statute could be construed to apply to "non-federally funded property where federal interests are implicated[.]" 588 F.3d at 67. The federal government clearly has an interest in supporting the activities of state and local law enforcement agencies, particularly in light of the fact that violations of federal law are frequently uncovered through the activities of these agencies,

often using the very equipment, patrol cars, that was damaged or destroyed in this case.[1] Legislative history supports this view, as Congress made it plain that an earlier version of the statute that it applied to "universities, hospitals, *and police stations*." *Hersom*, 588 F.3d at 64 (quoting H.R.Rep. No. 91-1549) (emphasis supplied).

Further, a determination that the property at issue falls within section 844(f)(1) is consistent with holdings by other circuits. The Tenth Circuit has rejected the argument that federal funds must be directed at the property bombed. In *United States v. Apodaca*, 522 F.2d 568, 572 (10th Cir. 1975), the court rejected a defendant's argument that the destruction of a patrol car does not give rise to federal jurisdiction because the vehicle was not possessed by an organization receiving federal financial assistance within the meaning of section 844(f). Even where the patrol car was purchased out of the sheriff's office operating budget, and not with any of the federal funds received by the county and sheriff's office, the statute applied in light of "the clear and unambiguous language of the statute" providing for application to "any property owned, possessed, used by or leased to any organization receiving federal financial assistance." *Id*. *See also United States v. Elliott*, 684 Fed. Appx. 685 (10th Cir. 2017) (unpublished).

Similarly, in *Elliott*, the defendant challenged application of section 844(f) where he bombed a building owned by a county that received federal funds because federal funds were not being directed to the building bombed or to the county attorney's office that was occupying the building. *Id*. at 695-96. The Tenth Circuit rejected the argument holding that the statute applies even when the federal funds are not directed to the building that was bombed or to the entity that

---

[1] This renders the defendant's hypothetical regarding football equipment belonging to a university receiving federal funds inapposite, as the loss of football equipment has no readily discernable impact on the research activities of the university, whereas the loss of patrol cars does have a negative impact on the functions of a police department.

was occupying the building because the building was owned by the county, and the county was receiving federal funds at the time of the bombing. *Id*. at 696.

In *United States v. Brown*, 384 F. Supp. 1151 (E.D. Mich. 1974), Brown argued that Congress lacked the authority to "enact a statute making it a crime to damage. or destroy personal or real property owned by 'any institution or organization receiving Federal financial assistance.'" The district court rejected this argument and determined that the statute was constitutional, finding that the Planned Parenthood clinic at issue was an "instrumentality" of the federal government because "it provides facilities in furtherance of an announced federal goal" and that "Congress must have the means to protect those institutions it is currently funding to carry out federal programs[.]" *Id*. at 1159, 1160; *see also United States v. Kimberlin*, 805 F.2d 210, 242 (7th Cir. 1986) (defining an "instrumentality" of the federal government as an institution that effectuates a national program with federal funds). Although the United States Court of Appeals reversed the district court's decision on other grounds, it expressly adopted the district court's analysis regarding the constitutionality of the statute. *United States v. Brown*, 557 F.2d 541, 559 (6th Cir. 1977). Here, the police organizations at issue receive funding from the federal government to support their activities in detecting and deterring the commission of crime, including crimes that fall under federal jurisdiction.

Section 844(f) is constitutional under the Spending Clause and the Necessary and Proper Clause to appropriate federal funds to promote the general welfare and to ensure funds are used for such purposes, as well as the Commerce Clause. *See* Art. I, § 8, cl. 1, 18; *United States v. DiSanto*, 86 F.3d 1238, 1244-46 (1st Cir. 1996). "Congress plainly indicated its intention that § 844(f) reach to the maximum extent permitted by the Commerce Clause, thereby resulting in a 'very broad provision covering substantially all business property.'" *United States v. Davis*, 872

F. Supp. 1475, 1483 (E.D. Va. 1995) (citing H.R. Rep. No. 91-1549). As applied in this case, section 844(f)(1) is a constitutional exercise of Congress's authority, and the defendant's motion to dismiss Counts One, Two, Six, Seven, Ten, and Eleven should be denied.

## COUNTS THREE, EIGHT, AND TWELVE

Next, the defendant argues that Counts Three, Eight, and Twelve, which charge the defendant with using a destructive device during an in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), should be dismissed because section 844(f)(1) arson does not qualify as a crime of violence. His argument is based on his contention that the offense can be committed with reckless intent and, pursuant to the recent decision by the Supreme Court of the United States in *Borden v. United States*, __ U.S. __, 141 S.Ct. 1817 (2021), offenses that can be committed with reckless intent do not qualify as crimes of violence under section 924(c). The defendant's contention that the federal crime of arson cannot be considered a crime of violence in light of *Borden* is incorrect.

In *Borden*, the Court states in the plurality opinion that "[a] person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." 141 S.Ct. at 1824 (citations omitted). It further states that "[t]he risk need not come anywhere close to a likelihood." *Id.* In holding that a reckless *mens rea* does not qualify an offense as a crime of violence, the Court expressly left open the issue of whether a higher degree of recklessness than ordinary recklessness, such as "extreme recklessness" or "depraved heart recklessness" is sufficient to qualify an offense as a crime of violence. *See id.* at 1825, n. 4.

The Eighth Circuit model jury instruction for 18 U.S.C. § 844(i), which criminalizes the malicious burning of property used in interstate commerce, states that "[t]o act maliciously means

6

to act with the intent that, or with willful disregard of, the *likelihood* that damage or injury would result." Model Crim. Jury Instr. 8th Cir. 6.18.844 (2020) (emphasis supplied); *see United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009) (citing the definition with approval). Malicious intent requires the fact finder to determine that a person intended or willfully disregarded a likelihood that damage or injury would result. This is clearly a higher level of intent than ordinary recklessness, which the Court in *Borden* stated does not come close to requiring a likelihood of damage or injury. It is more akin to knowing conduct, which requires a person be "'aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Borden*, 141 S.Ct. at 1823 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). At a minimum, it is extreme recklessness, as it requires knowledge of a likelihood of injury, not simply a risk of injury, as is the case with ordinary negligence. Accordingly, *Borden* does not foreclose an offense under 18 U.S.C. § 844(f)(1) from qualifying as a crime of violence pursuant to 18 U.S.C. § 924(c).

The defendant also argues that an offense under section 844(f)(1) cannot qualify as a crime of violence because it can be committed against one's own property. Based on the plain language of the statute, this argument is without merit. Section 844(f)(1) requires that the property be "owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance." As the United States Court of Appeals for the Tenth Circuit quite sensibly observed in rejecting a similar argument, "[i]t is self-evident that a criminal defendant cannot be any of those entities." *United States v. Elliott*, No. 21-8016, 2021 WL 2947779, at *2–3 (10th Cir. July 14, 2021) (unpublished). The court in *Bolen v. United States*, __ F.Supp.3d __, 2021 WL 1700340 (D. Idaho Apr. 29, 2021), which determined that a person could violate section 844(f)(1) by targeting his or her own property either failed to consider or ignored the fact that, in order to violate section 844(f)(1), the property must be owned,

possessed, or leased by a non-corporeal entity. Therefore, its hypotheticals that the owners of a building that received HUD funds could violate section 844(f)(1) by burning down their own building are fatally flawed because, if they own it, it is not owned by an institution or organization. If, in turn, it is owned by an institution or organization, it is not owned by the human defendant or defendants who committed the arson.[2] The court in *Bolen* was mistaken in its analysis of section 844(f)(1). The defendant's motion to dismiss Counts Three, Eight, and Twelve should be denied.

## COUNTS FOUR AND FIVE

Finally, the defendant seeks to dismiss Count Four of the Superseding Indictment, which charges the defendant with possession of an unregistered destructive device. He contends that a conviction on both Count Four and Count Five, which charges the defendant with knowingly making a destructive device, would violate the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.

The defendant's motion is premature. Even assuming, without conceding, that imposing punishment on both Count Four and Count Five would violate the Double Jeopardy Clause, "[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006). "Where two statutory sections operate independently of one another, 'there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes.'" *Id.* (quoting *Ball v. United States*, 470 U.S. 856, 860 (1985)). In addition, "'a defendant has no constitutional

---

[2] Fictional entities such as organizations and institutions are frequently created for the very purpose of establishing a legal distinction between property belonging to an individual and property belonging to the entity.

right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution[.]'" *Id.* (quoting *United States v. Batchelder*, 442 U.S. 114, 124, 125 (1979)).

There also exists, at this time, the possibility that, should both Count Four and Count Five be submitted to the jury after presentation of the evidence, the jury might conclude that the United States proved that the defendant possessed the destructive device in question but that it failed to prove that he made the destructive device. In this scenario, there would be no violation of the Due Process Clause because the defendant would only have been convicted of, and subject to punishment for, one of the two counts. There is currently no issue that implicates the Double Jeopardy Clause present in this case, and the defendant's motion to dismiss Count Four should be denied.

WHEREFORE, the United States respectfully requests that the defendant's motion be denied.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney

STACY WILLIAMS
Bar No. 2011081
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Stacy.Williams@usdoj.gov