```
 1              IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF ARKANSAS
 2                        CENTRAL DIVISION

 3
      UNITED STATES OF AMERICA,
 4
                      Plaintiff,     No. 4:20-CR-288-DPM-1
 5

 6    v.

 7
      MUJERA BENJAMIN LUNG'AHO,        Wednesday, August 23, 2023,
 8                                     Little Rock, Arkansas

 9              Defendant.

10
                        TRANSCRIPT OF PLEA
11           BEFORE THE HONORABLE D.P. MARSHALL, JR.,
                  UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
     On Behalf of the Plaintiff:
14
     MR. JOHN RAY WHITE,
15        Assistant United States Attorney
          United States Attorney's Office
16        Eastern District of Arkansas
          Post Office Box 1229
17        Little Rock, Arkansas 72203-1229

18
     On Behalf of the Defendant:
19
     MR. MICHAEL KIEL KAISER,
20        Lassiter & Cassinelli
          1218 West Sixth Street
21        Little Rock, AR 72201

22
     Defendant present
23

24        Proceedings recorded by FTR Gold.  Transcript prepared
     utilizing computer-aided transcription
25
```

P R O C E E D I N G S

1

2          THE COURT:  This is the United States against Mujera

3  Lung'aho.  It's case number 4:20-CR-288-DPM-1.  Mr. Lung'aho is

4  here -- welcome back, sir -- with Mr. Kaiser at his side.

5          MR. KAISER:  Good morning, Judge.

6          THE COURT:  The United States is here in the person of

7  Mr. White.  Agent Hicks at the table.  Good to see both of you.

8          MR. WHITE:  Thank you, your Honor.

9          THE COURT:  We're here today, Mr. Lung'aho, because

10  the lawyers have told my staff that you're thinking about making

11  a deal with the United States and pleading guilty conditionally

12  to one of these charges.  For all of that to happen, I must make

13  certain of several things.  So bear with me this morning,

14  please.

15          Counsel, as y'all will note, we do not have a court

16  reporter.  The Court is busy this morning and the reporters are

17  otherwise occupied.  Our transcript is therefore being made by a

18  recording.  Unless I say otherwise, therefore, I need everyone

19  to remain seated on your microphone speaking at pledge of

20  allegiance speed and with -- with emotion so that everything can

21  be recorded and we can have a good transcript.

22          All right.  Let's get back to business.

23          If you will please stand, Mr. Lung'aho.  This is one of

24  those times I need you to stand.  My deputy will give you the

25  oath.

```
 1          (Defendant sworn.)
 2              THE COURT:  You can be seated, sir.  Thank you.
 3      And tell me the truth, Mr. Lung'aho, because it's a crime
 4   if a man lies after he has taken the oath.  Do you understand?
 5              THE DEFENDANT:  Yes, I understand.
 6              THE COURT:  Good.  Is your mind clear?
 7              THE DEFENDANT:  It is very clear.
 8              THE COURT:  Are you under the influence of any
 9   substance at all that clouds your mind?
10              THE DEFENDANT:  Not at all.
11              THE COURT:  Had any alcohol to drink in the last day
12   or two?
13              THE DEFENDANT:  No, sir.
14              THE COURT:  What about medicine, prescription or
15   over-the-counter?  Are you taking any that affects your
16   thinking?
17              THE DEFENDANT:  Lexapro to help with anxiety, but I
18   don't think it would alter my thought process.
19              THE COURT:  I appreciate the clarification.  Do you
20   think that that medicine allows you to think better and more
21   clearly?
22              THE DEFENDANT:  Not really, no.
23              THE COURT:  Do you find it interferes with your
24   thinking?
25              THE DEFENDANT:  No.  No.
```

1          THE COURT:  Okay.  Do you think your mind is clear

2    today?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Are you under the influence of any

5    substance at all that, as far as you can tell, clouds your mind?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  How has Mr. Kaiser done as your lawyer?

8          THE DEFENDANT:  Very well.

9          THE COURT:  Has he communicated with you?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Explained your options to you?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Gotten you ready for today?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Good.  Do you understand that while the

16   lawyer gets to make many of the smaller decisions in the case,

17   what I'll call the tactical decisions, the client gets to make

18   the most important decisions, and among those is how to plead.

19   Do you understand that architecture?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Do you understand that it's your decision

22   and yours alone on whether to go to trial or offer a guilty

23   plea?

24         THE DEFENDANT:  I do.

25         THE COURT:  Have you thought carefully about what

1 choice to make?

2          THE DEFENDANT:  Indeed, I have.

3          THE COURT:  Good.  Have you talked thoroughly with

4 Mr. Kaiser about your options?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that whichever fork in

7 that road you want to take, trial or offering a plea, either

8 fork is fine with me, with the Court.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  If you want a trial, we'll have a trial.

11 If you want to offer a plea, I'll consider it.

12          THE DEFENDANT:  Right.

13          THE COURT:  It's your call.

14          THE DEFENDANT:  Yes.

15          THE COURT:  Okay.  Has anyone threatened you to get

16 you to change your plea?

17          THE DEFENDANT:  No.

18          THE COURT:  Has anyone threatened someone that you

19 love or something that you care about to get you to change your

20 plea?

21          THE DEFENDANT:  No, they have not.

22          THE COURT:  I understand that this proposed plea

23 agreement is a two-way street of mutual promises.  Has anyone

24 made any other promise to you to get you to change your plea?

25          THE DEFENDANT:  Not anything other than what's

1    articulated in the plea to --

2            THE COURT:  Good.  That's what I wanted to pin down.

3    It's all in the paperwork, is it?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Good.

6        The law requires me, Mr. Lung'aho, to tell everybody

7    sitting where you are, each person, that if he is not a citizen

8    of the United States and he pleads guilty to a charge, a serious

9    charge like the one you're considering pleading guilty to, that

10   there could be serious immigration consequences in addition to

11   the punishments prescribed by law.  Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Good.  My memory is that you are an

14   educated man; is that correct?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Have you read the charges pending against

17   you?

18           THE DEFENDANT:  Yes, I have.

19           THE COURT:  Do you understand them?

20           THE DEFENDANT:  Yes.

21           THE COURT:  In particular, Count 11.  Have you read it

22   and do you understand it?

23           THE DEFENDANT:  Yes, I have, and I do understand it.

24           THE COURT:  Good.  And thank you for answering both

25   parts of my compound question.

1          This proposed plea agreement, have you read it?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Have you discussed it thoroughly with

4    Mr. Kaiser?

5               THE DEFENDANT:  Yes, I have.

6               THE COURT:  Did he answer any questions you may have?

7               THE DEFENDANT:  Yes, he did.

8               THE COURT:  Have y'all discussed possible sentences,

9    how that might sort out?

10              THE DEFENDANT:  Yes, we have gone over it, to my

11   understanding as the best we could so far.

12              THE COURT:  Good.  Don't go into the details.  I

13   didn't mean to inquire into the details of y'all's talk.  That's

14   privileged because it's between you and your lawyer.  I just

15   wanted to be sure that you had had discussions in the category

16   of sentencing.

17              THE DEFENDANT:  Yes, we have.

18              THE COURT:  Good.  Whatever Mr. Kaiser may have said

19   to you is a prediction, his educated guess about how things are

20   going to sort out.  Do you understand that?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  He has been in front of me and in this

23   court many times.  He knows your case well, obviously.  He's

24   litigated it vigorously here and in the court of appeals.  And

25   he knows the law.  But, a couple of points:

1    One: it's just not within his power to see the future.  He

2    doesn't know what I'm going to do.  Are you with me?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Two: he can't promise you a sentence.

5    That's my call down the line, not his.  Do you understand?

6    THE DEFENDANT:  Yes.

7    THE COURT:  And three: he makes mistakes.  He's a

8    human being.  He's doing, I'm sure, the best he can, but he's

9    not perfect.  What I'm trying to underline for you here is the

10    uncertainty about sentencing as we sit here today.  Do you

11    understand that?

12    THE DEFENDANT:  Yes, I understand that.

13    THE COURT:  Good.  If you're disappointed in the

14    sentence that I ultimately decide on, that disappointment is not

15    a sufficient reason to say to me, "Judge Marshall, please give

16    me my guilty plea back, I would like to have a trial.  Now that

17    I know what you're going to do, I'm going to take my chances in

18    front of a jury."  Do you understand?

19    THE DEFENDANT:  I understand.

20    THE COURT:  Good.

21    Mr. Kaiser, how are you today?

22    MR. KAISER:  Doing quite well, your Honor, thank you.

23    THE COURT:  Good.  Do you have any concern about the

24    clarity of your client's mind?

25    MR. KAISER:  None whatsoever.

1          THE COURT:  Have y'all communicated regularly and

2    thoroughly in recent days and weeks about the matter now before

3    the Court?

4          MR. KAISER:  Yes, sir.

5          THE COURT:  Have you conveyed to him all plea offers

6    made by the United States?

7          MR. KAISER:  I have, your Honor.

8          THE COURT:  From your perspective, is the

9    lawyer-client relationship intact?

10          MR. KAISER:  Yes, sir.

11          THE COURT:  Good.  Thank you.

12      I find that the lawyer-client relationship is in good

13    shape.  I also find, Mr. Lung'aho, that your mind is clear and

14    you know exactly why we're here and you can make the decisions

15    that you need to make today.

16      If at any point during the hearing in response to my

17    question or question of mine or just in general you need to take

18    a break to consult privately with Mr. Kaiser, please tell me and

19    I will allow you to do so.  Okay?

20          THE DEFENDANT:  Okay.

21          THE COURT:  Good.

22      Mr. White, how are you?

23          MR. WHITE:  I'm good, your Honor.

24          THE COURT:  Good.  Resist the temptation to stand up.

25    I know it's an old habit with you.  Are things okay down the

1  street?

2          MR. WHITE:  Yes, sir, they are.  I just -- there's

3  lots going on, as the Court just mentioned a minute ago.  And I

4  just came from Judge Baker's courtroom where they're about to

5  start a closing argument in another trial.

6          THE COURT:  I knew that my sister Baker was getting

7  close on that matter and was about to give the case to the jury.

8  I haven't had the chance to ask her about the nature of the

9  case.  What's the charge?

10          MR. WHITE:  Felon in possession of ammunition, your

11  Honor.

12          THE COURT:  Okay.  Well -- and who among your

13  colleagues has been up there working hard?

14          MR. WHITE:  Erin O'Leary and Bart Dickinson for the

15  government.  And then Ms. Gray and Alex Betton are representing

16  the defendant.

17          THE COURT:  Very good.  Okay.  Well, maybe we can get

18  you up to watch, but I don't know.  We'll see.

19      Would you please -- as I understand the parties' agreement,

20  Mr. Lung'aho is considering pleading guilty to Count 11,

21  maliciously -- that makes it a crime to maliciously destroy

22  property by fire, government property.

23      Would you please put some flesh on those bones on Count 11

24  and then put on the record the potential penalties that he would

25  face if I accept that plea.

1      MR. WHITE:  I will with this caveat, your Honor.  I

2  brought over everything I thought I needed except for the

3  Indictment.

4      THE COURT:  Well, let me try and you double-check me,

5  how about?

6      MR. WHITE:  That would be great, if the Court doesn't

7  mind.

8      THE COURT:  So as I read the Indictment -- and I think

9  it's a Superseding Indictment, it's Document 56 in the court

10  file -- Count 11 alleges that on or about September 3rd, 2020,

11  in the Eastern District of Arkansas, the defendant, Mujera

12  Benjamin Lung'aho, maliciously damaged and destroyed by means of

13  fire, a vehicle, namely: a patrol car, located at the North

14  Little Rock Police Department Rose City Substation, which was

15  owned in whole or in part by the City of North Little Rock, an

16  organization receiving federal financial assistance.

17      All in violation of Title 18, United States Code,

18  Section 844(f)(1).

19      Mr. Lung'aho, do you understand that charge?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Are you clear on what it is the grand jury

22  is saying that you supposedly did wrong?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Good.

25      Counsel, double-check me on potential penalties.  I believe

1    the statute -- the applicable statute says not less than five

2    years in prison, not more than 20 years in prison.  So somewhere

3    in that range.  Not more than three years of supervision after

4    prison when you'd be under the thumb of the probation office.  A

5    fine of not more than $250,000, assuming ability to pay, and a

6    $100 fee called a special assessment.

7         Mr. White, do you agree that those are the applicable

8    penalties?

9              MR. WHITE:  I do, your Honor.

10             THE COURT:  Mr. Kaiser?

11             MR. KAISER:  Yes, sir.

12             THE COURT:  Do you understand those potential

13   penalties, Mr. Lung'aho?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Good.

16        All right.  I believe I covered all the ground that I

17   need -- needed to earlier in the case about whether you thought

18   about all of this and your options here in consultation with

19   counsel, whether you've been threatened or not to make the deal.

20   So let's move into this proposed plea agreement and the

21   particulars of it.

22        I want to be sure that you understand it, Mr. Lung'aho, and

23   that you know what you're getting and what you're giving up in

24   the bargain, okay?

25             THE DEFENDANT:  Okay.

1          THE COURT:  Mr. White, would you summarize the

2   parties' plea agreement?

3          MR. WHITE:  I will, your Honor.

4      The biggest transaction, your Honor, is that Mr. Lung'aho

5   agrees to plead guilty to Count 11 of the Superseding

6   Indictment.  And following the Court's acceptance of his guilty

7   plea, the United States will ask the Court to dismiss the other

8   counts in the Superseding Indictment that Mr. Lung'aho is

9   charged with.

10      There are a number of other particular provisions of the

11  plea agreement, and the Court knows usually I paraphrase those

12  provisions, but because Mr. Kaiser has been as particular as he

13  has about some of the language, I'm just going to read some of

14  those provisions if that's all right.  And I'll just start with

15  paragraph 2 of the plea agreement, describes the elements of the

16  offense.  And then the last paragraph of paragraph 2 provides

17  that the defendant is going to agree that he committed those

18  offenses, but that his admission to paragraph 2D is not intended

19  to waive his arguments related to the conditional appeal that

20  the parties have agreed to in writing.

21      Paragraph 3 deals with potential penalties.

22      Paragraph 4 deals with waivers, and it begins with a number

23  of waivers related to his guilty plea:  That he's waiving his

24  right to appeal pretty much everything including his guilty

25  plea, the Court's sentence, except he reserves the right to

1    appeal claims of prosecutorial misconduct, or if the Court,

2    after determining his guideline range, imposes a sentence above

3    the guideline range and he makes a contemporaneous objection, he

4    can appeal that also.

5        Particularly in paragraph 4 -- I know it's -- I would call

6    it -- what is it, clause two now?  That he's reserving his right

7    to appeal the Court's ruling that 844 (f)(1) is constitutional

8    as applied to his case as set forth in Document 246 in which the

9    Court denied his motion to dismiss Counts 1, 2, 6, 7, 10, and 11

10   of the Superseding Indictment.

11       He is waiving his right to collaterally attack the

12   conviction.  That is after all of his appeals have run and if he

13   wants to attack the conviction some other way, he cannot do that

14   unless he shows prosecutorial misconduct or ineffective

15   assistance of his own counsel.

16       And then he's also agreed to waive the right to have his

17   sentence modified under 3582(c)(2) or to object to restitution

18   or forfeiture that the Court may order as well as a number of

19   trial rights.

20       And, your Honor -- I can't remember -- did the Court

21   already go over the -- to plead guilty he'll have to waive the

22   right to all these -- to be presumed innocent or to confront and

23   cross-examine witnesses?

24       THE COURT:  I did not go through the trial-related

25   rights, Mr. White, and I would appreciate you doing so and then

1    I'll confirm.

2            MR. WHITE:  I'll do that.

3        So he's also waiving the right to plead not guilty or to

4    persist in that plea and the right to a speedy and public trial

5    before a jury, he's waiving the right to be presumed innocent

6    and to have the burden of proof placed on the United States to

7    establish guilt beyond a reasonable doubt, and the right to

8    confront and cross-examine witnesses, the right to testify in

9    his own behalf if he had the intention to or to remain silent if

10   he had chosen that, to call witnesses or to require them to

11   appear.  And part of the reason that he's -- that that comes up

12   is that if the Court is going to -- if he intends to plead

13   guilty, the Court will have to ask him if he's guilty and he'll

14   be required to say so in open court.  And that's one of those

15   rights.  And then he also understands that if there's a question

16   about his citizenship, a guilty plea may have consequences with

17   respect to that.

18           Your Honor, the parties in paragraph 5 have kind of

19   negotiated some stipulations, particularly that -- pardon me --

20   there's a statutory minimum sentence for the crime charged.  And

21   the United States, as part of its negotiations with the

22   defendant and Mr. Kaiser, has agreed not to seek a sentence

23   greater than 84 months imprisonment, notwithstanding the fact

24   that his -- the statutory range is five years to 20 years.  We

25   have agreed that the base offense level should be calculated

1  pursuant to Guideline Section 2K1.4.  And we're recommending

2  that his offense level be increased under Guideline

3  Section 3B1.1, only three points, three levels.

4      He understands that he's -- he'll be eligible for a

5  two-level reduction for acceptance of responsibility and we'll

6  -- and the United States will ask for a third level if he

7  doesn't do anything inconsistent with acceptance of

8  responsibility between his change of plea and sentencing.

9      The parties stipulate there's no other enhancements or

10  reductions under 2K1.4 Chapter 3 or Chapter 5 of the guidelines

11  other than those specifically set out in the agreement in the

12  addendum.

13      And then paragraph 4F provides a factual basis for the

14  offense as well as some of the relevant conduct that is

15  described that was part of his offense.  And I'm assuming at

16  this point the Court is wanting me to skip that for the time

17  being rather than read that; is that correct, your Honor?

18          THE COURT:  Yes, on the facts, the factual

19  stipulations?

20          MR. WHITE:  Yes, your Honor.

21          THE COURT:  Yes.

22          MR. WHITE:  And then he's specifically waiving any

23  objection to searches or seizures or statements that have been

24  made as a part of the investigation as well as his guilty plea.

25      And then, finally, in paragraph 5 he acknowledges that

1    despite the fact that the parties have negotiated this pretty

2    hard, the Court's not bound by the parties' negotiations with

3    respect to the plea agreement or the addendum.  He acknowledges

4    that the guideline -- the guidelines themselves are advisory and

5    the Court is not bound by those.  There are some other kind of

6    standard provisions, your Honor.

7         And then we get to paragraph 9D which I want to mention

8    specifically, and that is with respect to restitution.  And the

9    parties agree that those amounts and those organizations are

10   entitled to the money that is described in paragraph 9D.

11        There are -- there's a provision on breach of plea

12   agreement, which is paragraph 14.

13        And then other than that, the provisions are fairly

14   standard with the exceptions of paragraph 18 -- which I say an

15   exception -- it's actually standard, but it's important because

16   in that the defendant acknowledges that he has read the plea

17   agreement and that he's discussed it with his lawyer and he's

18   entering into it on purpose.

19        And then there are also, your Honor, is a plea agreement

20   addendum which we'll ask the Court to file under seal at the

21   appropriate time.

22             THE COURT:  Thank you, Mr. White.

23        Mr. Lung'aho, is that the deal you believe you've made with

24   the United States?

25             THE DEFENDANT:  Yes, it is.

1           THE COURT:  Do you understand the deal in general?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand it and each and every

4    particular?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Have you thought carefully about whether

7    to make this deal?

8           THE DEFENDANT:  I have.

9           THE COURT:  Have you consulted fully with Mr. Kaiser

10   about whether to make this deal?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Have you been involved with Mr. Kaiser in

13   the negotiations of the particular terms of the deal?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that under this deal you

16   are waiving all of your trial-related rights?

17          THE DEFENDANT:  That's correct.

18          THE COURT:  And if you plead guilty and I accept,

19   everyone signs the agreement, then the only question left in the

20   case will be what's the just and fair sentence under law for

21   you.  Do you follow?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And we discussed earlier about how that

24   decision, the sentencing decision is for me to make down the

25   line, right?

```
1              THE DEFENDANT:  Yes, we did.

2              THE COURT:  Good.  And you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Good.  The waivers that Mr. White went

5    over in addition to the trial-related rights, do you understand

6    the other rights that you're waiving?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Do you understand the restitution

9    obligation that you're undertaking here in this agreement?

10             THE DEFENDANT:  I do.

11             THE COURT:  Do you understand the reservation of your

12   right to appeal my ruling about the constitutionality of this

13   statute as applied to you?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  Okay.  Counsel, a question for both of

16   you.  Does the parties' agreement address what happens if

17   Mr. Lung'aho is successful on appeal?  What happens to the case

18   as against him?  The ultimate practical effect, I would say?

19             MR. WHITE:  No, your Honor.

20             THE COURT:  Mr. Kaiser?

21             MR. KAISER:  It does not.

22             THE COURT:  Okay.

23      Mr. Lung'aho, do you understand -- do you recall the

24   section of the agreement about stipulations, things that the

25   parties are agreeing?
```

1         THE DEFENDANT:  Yes, I do.

2         THE COURT:  Do you understand the last provision of

3    that section that indicates that I am not bound, the Court is

4    not bound by the parties' stipulations?

5         THE DEFENDANT:  Yes.

6         THE COURT:  Okay.  Mr. White, if we had a trial, do

7    you believe that you and your colleagues on behalf of the United

8    States could prove each and every fact that is written in

9    paragraph something F, 5F, as in Frank -- or Foxtrot if we're

10   going to use our military labeling -- in 5F of the agreement?

11        MR. WHITE:  I do, your Honor.

12        THE COURT:  Okay.  Mr. Lung'aho, do you need to take a

13   break and visit privately with Mr. Kaiser about anything before

14   I ask the harder questions?

15        THE DEFENDANT:  No.

16        THE COURT:  All right.  As to Count 11 of the

17   Superseding Indictment charging you with this malicious

18   destruction of the North Little Rock police car, arson, here in

19   the Eastern District of Arkansas, how do you plead?

20        THE DEFENDANT:  Guilty.

21        THE COURT:  Is that because you are, in fact, guilty

22   of that charge?

23        THE DEFENDANT:  Yes, it is.

24        THE COURT:  Do you agree with and stipulate to -- or

25   do you agree with each and every fact as specified in

1   paragraph 5F of the agreement?

2           THE DEFENDANT:  Yes.

3           THE COURT:  That's a tentative -- there's some

4   tentativeness in your voice and your body language.  And it's

5   important -- I have to conclude that there's a sufficient

6   factual basis for your plea.  And so the particulars here are

7   important.  I'll give you a second to talk about that.

8       (Discussion held off the record.)

9           MR. KAISER:  We're ready to proceed, your Honor.

10  Thank you for allowing us that time.

11          THE COURT:  You're welcome, Mr. Kaiser.

12      So, Mr. Lung'aho, again, paragraph 5F, as in Foxtrot, in

13  the agreement, it's at pages five and six.  Take a minute and

14  look back through it.

15      Is each and every fact as written in the parties' agreement

16  true and correct as far as you know?

17          THE DEFENDANT:  Yes.  Based on my recollection and

18  review of the discovery, yes.

19          THE COURT:  The statute here makes it a crime for

20  someone to maliciously damage or destroy or attempt to damage or

21  destroy by means of fire or an explosive any building, vehicle,

22  or other personal or real property that's owned wholly or partly

23  or leased to the United States or a department or agency of it

24  or some institution or organization receiving federal funds or

25  federal financial assistance.

1    Did you maliciously damage or attempt to damage by means of

2    the Molotov cocktail the patrol car located at the North Little

3    Rock Police Department Rose City Substation, a patrol car owned

4    by North Little Rock, somewhere between September 3rd, 2020?

5         THE DEFENDANT:  I did.

6         THE COURT:  Is this what you want to do, Mr. Lung'aho,

7    to make this deal with the United States and take that appeal

8    and move on?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Are you sure?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Mr. Kaiser, do you know of any reason I

13   should not accept the plea?

14        MR. KAISER:  No, sir.

15        THE COURT:  Mr. White, same question?

16        MR. WHITE:  No, your Honor.

17        THE COURT:  I find that the crime charged in Count 11

18   of the Superseding Indictment was committed by you, Mujera

19   Benjamin Lung'aho, now before the Court.  You've sworn to tell

20   me the truth, sir.  You've agreed to the facts as specified in

21   the parties' plea agreement and you've answered specifically

22   when I asked you in terms of the statute what your intentions

23   were on that evening.

24    So there's a sufficient factual basis for the plea.  I find

25   that your plea is knowing and voluntary.  You know your rights.

1    You know, I'm certain, what it is that you're getting and what

2    it is that you're giving up under the agreement, in particular

3    you understand that we're not going to have a trial.  We'll move

4    on to sentencing.  And that you're keeping the right to go to

5    the court of appeals and ask that court if I was correct or

6    incorrect in my analysis on whether this statute is

7    constitutional as applied to you in our circumstances here, the

8    federal funding issues that are all inside here in the agreement

9    and that our record was clear about before.

10         I appreciate counsel's work pulling that together.

11         But long story short on this issue, Mr. Lung'aho.  I'm

12   clear, I'm certain that you understand what you're getting and

13   what you're giving up in the deal.

14         And, last, I don't see any indication that anyone has

15   pushed or pulled you into doing this.  I think you have made up

16   your own mind about it.  And, indeed, as you told me, you had

17   been, unlike many defendants, deeply involved in the negotiation

18   of the particular terms of the plea agreement.  And I applaud

19   that.  I wish that more of the folks that came through those

20   doors or the side door had your level of education and

21   engagement and sophistication, were able to work with your

22   lawyer in the way you have done to -- it helps the system work

23   better, quite frankly.

24         So for all of those reasons, I accept your plea of guilty

25   to Count 11.

1          Mr. White, a motion?

2          MR. WHITE:  I ask the Court to dismiss the remaining

3    counts that are against Mr. Lung'aho, please, your Honor.

4          THE COURT:  I grant the United States motion.  All

5    other counts in the Superseding Indictment and all counts in the

6    original Indictment as to you and you only are dismissed,

7    Mr. Lung'aho.  They're dismissed without prejudice.  And we

8    will -- we will move on in the case to sentencing in a few

9    months.

10         Counsel, if you'll get with Ms. Black after I leave the

11   courtroom.  She'll come up with a date and time certain for you

12   that's convenient, I hope, for all of us.  And then we'll see

13   what the court of appeals says about this interesting issue, and

14   we will all move on with our lives.

15         Mr. Kaiser, any other ground to cover?

16         MR. KAISER:  No, sir.

17         THE COURT:  Okay.  I was going to ask Mr. Lung'aho if

18   he had any questions, and if so, to consult with you before he

19   asked me, but I see that you've already done that, so I'll skip

20   that step.

21         MR. KAISER:  Yes, sir.

22         THE COURT:  Mr. White, any other ground to cover?

23         MR. WHITE:  No, your Honor.

24         THE COURT:  All right.  Counsel, I thank you for your

25   work.  Obviously a great deal of effort went into this before we

1  came into the courtroom today and I look forward to seeing you

2  around the bend on our sentencing.  We're in recess.

3        (Proceedings concluded.)

4                    TRANSCRIBER'S CERTIFICATE

5      I certify that the foregoing is a true and correct
   transcript, to the best of my ability, of the recorded
6  proceedings.

7

   /s/B. Graham Higdon, RMR, CRR   Date:  February 7, 2024
8  United States Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25